

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Arthur B. Knickerbocker
The Adjutant General of Texas
Austin, Texas

Dear Sir:

Opinion No. O-7398
Re: Does the Texas National
Guard Armory Board have
authority to lease for
the State of Texas the
Eagle Mountain Base from
the Federal Government?
And related questions.

We are in receipt of your letter of November 7,
1946, withdrawing your former opinion request and request-
ing an opinion upon the following questions:

"(1) Under the laws of this State, does the Texas
National Guard Armory Board have authority to lease for
the State of Texas from the Federal Government, under
a revocable contract, facilities such as Eagle Mountain
Base, which is located near Fort Worth, Texas, and is
presently under the control of the United States Navy?

"(2) Would the Texas National Guard Armory Board
have authority to execute a lease to the Fort Worth
Cavalry Club, a private corporation, a portion of the
property above described?

"(3) Can the Armory Board then sub-rent the residue
of the above property to the National Guard units for
Armory facilities, said rental to be paid from State
appropriated funds?

"The purpose for securing the above mentioned facili-
ties is to provide armories for Texas National Guard
units to be organized in Fort Worth, Texas.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Arthur C. Knickerbocker, Page 2

In answer to your first question, the Legislature has seen fit to delegate to the National Guard Armory Board the power to acquire property for the purpose of the Texas National Guard. It is therefore our opinion that your first question is answered in the affirmative. A discussion of the authority of the National Guard Armory Board follows:

The 44th Texas Legislature, Acts 1935, created the Texas National Guard Armory Board. The purpose and duty of this Board was to have supervision of the construction, rental, control, maintenance in operation of all national guard armories in Texas.

The 45th Texas Legislature, Acts 1937, amended this Act to include also the word "acquisition".

The 46th Texas Legislature, Acts 1939, amended this law again and it now appears in Vernon's Annotated Civil Statutes as Article 5890b. Section II of Article 5890b, V. A. C. S., which is pertinent herein, reads as follows:

"The Board hereby created shall be and it is hereby constituted a body politic and corporate. It shall succeed to the ownership of all property of, and all lease and rental contracts entered into by, the Texas National Guard Armory Board that was created by prior statutes and all of the obligations contracted or assumed by the last mentioned Board with respect to any such property and contracts shall be the obligations of the Board created by this Act. With this exception, no obligation of said former Board shall be binding upon the Board hereby created. It shall be the duty of said Board to have charge of the acquisition, construction, rental, control, maintenance and operation of all Texas National Guard Armories, including stables, garages, rifle ranges, hangers and all other property and equipment necessary or useful in connection therewith, and the said Board shall possess all powers necessary and convenient for the accomplishment of such duty, including, but without being limited thereto, the following express powers:

"(a) To sue and be sued.

"(b) To enter into contracts in connection with any matter within the objects, purposes or duties of the Board. * * *

"(c) To have and use a corporate seal.

"(d) To appoint, employ and pay and dismiss an Executive Secretary, and, also, such other officials, counsel, lawyers, agents and employees as may be necessary to carry out the objects, purposes and duties of the Board, and to prescribe their duties and fix their compensation.

"(e) To adopt, and from time to time to change or amend, all necessary by-laws, rules, and regulations for the conduct of the business and affairs of the Board.

"(f) To acquire, by gift or by purchase, for use as building sites or for any other purposes deemed by said Board to be necessary or desirable in connection with or for use of units of the Texas National Guard, property of any and every description, whether real, personal or mixed, including, but without limitation on the foregoing, leasehold estates in real property, and hold, maintain, sub-lease, convey and exchange such property, in whole or in part, and/or to pledge the rents, issues and profits thereof in whole or in part; * * *

"(g) To construct buildings on any of its real property. * * *

"(h) From time to time, to borrow money, and to issue and sell bonds, debentures and other evidences of indebtedness for the purpose of acquiring one or more building sites and buildings, * * *

"(i) To execute and deliver leases, or sub-leases in the case of buildings located upon lease-hold estates acquired by the Board, * * *; provided, however, that if at any time the State of Texas shall fail or refuse to pay the rental reserved in any such lease or sub-lease, or shall fail or refuse to lease or sub-lease any such building and site, or to renew

Honorable Arthur B. Knickerbocker, Page 4

any existing lease or sub-lease thereon at the
rental provided to be paid, then the Board shall
have the power to lease or sub-lease such building
and equipment and the site therefor to any person
or entity and upon such terms as the Board may de-
termine."

Mr. Justice Sharp of the Texas Supreme Court wrote
the majority opinion upholding the validity of this Act
in the case of Texas National Guard Armory Board vs. Mc-
Graw, 126 S. W. (2d) 627, wherein he stated in upholding
the Act the following:

"This Act places the burden on the Board to
do whatever is necessary to carry out its objects
and purposes, and such contracts or leases are to
be made 'through the Adjutant General for such
lawful terms as may be determined by the Board.'
The Board is authorized to acquire sites for ar-
mory purposes, by gift or purchase, and to pledge
the rents or profits thereof and to execute bonds,
debentures and other evidences of indebtedness
therefor, payable solely from the rent, issues and
profits thereof; * * *. In our opinion, this Act
does not violate any of the provisions of the Con-
stitution, and we find adequate grounds on which
to base its validity."

In 1935 the Supreme Court in the case of Fort Worth
Cavalry Club vs. Sheppard, 83 S. W. (2d) 660, in discus-
sing the powers of the Adjutant General to execute leases
for national guard armories stated that under the laws of
this State the Adjutant General had no expressed right to
execute lease contracts unless the wording of the appro-
priation act makes such funds available to his department
for that purpose.

Thereafter 1939 the 46th Texas Legislature amended
Article 5790 V. A. C. S., giving the Adjutant General the
express right to execute lease contracts for armories, but
this power was limited as follows:

"* * * and the Adjutant General shall not lease or sub-lease any property for armory purposes in or by any municipality from any person other than the Texas National Guard Armory Board, so long as adequate facilities for such armory purposes in or about such municipality are available for renting from the Texas National Guard Armory Board."

The evident purpose of this amendment was to strengthen Article 5890b by giving the Adjutant General the express right to execute leases with the National Guard Armory Board. Since the Supreme Court had held in the Fort Worth Cavalry Club vs. Sheppard case, supra, that he had no express power under the statute to do this, the Legislature has granted the National Guard Armory Board the power and authority to do all that is necessary to provide the State with National Guard Armories. To further this purpose, the Board was authorized to borrow money, to pledge the rent profits to secure such indebtedness, such profits to be derived from renting armories to the State within the limitations of current appropriations made to said Board, and the Adjutant General was designated to act as the agent to carry out the purposes intended.

As you can see, the Legislature delegated broad powers to the National Guard Armory Board, and the courts have given a liberal construction to the act.

If the Adjutant General waives his rights or otherwise fails or refuses to lease or sub-lease as provided in Subsection (1) of Section II of Article 5890b, supra, then, in answer to your second question, it is our opinion that the Texas National Guard Armory Board would have the authority to execute a lease to the Fort Worth Cavalry Club, a private corporation, a portion of the property that is not required by the Texas National Guard, provided the lease obtained from the Federal Government authorized the sub-lease, and provided further that it is sub-leased for its reasonable value.

The National Guard Armory Board is authorized to sub-rent to National Guard units, armory facilities as stated in Opinion No. O-5505 herewith attached.

Trusting that this answers your inquiry, we are

Yours very truly,

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By

W. P. Watts
Assistant

WPW:al
Encl.